**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAWN DILLON,

      Plaintiff - Appellant,

v.

TWIN PEAKS CHARTER
ACADEMY; and ST. VRAIN
VALLEY SCHOOL DISTRICT NO.
RE-1J,

      Defendants - Appellees.

No. 06-1189
(D.C. No. 99-cv-2462-JLK)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

Plaintiff-Appellant Dawn Dillon appeals from the district court's order

granting Defendant-Appellee Twin Peaks Charter Academy's ("the Academy")

motion for summary judgment and its related entry of judgment for the Academy

and St. Vrain Valley School District No. RE-1J ("the District") on all claims. Ms.

Dillon was formerly a paraprofessional at the Academy. She filed suit under 42

U.S.C. § 1983 asserting that Defendants violated her rights under the First, Fifth,

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

and Fourteenth Amendments to the U.S. Constitution.  Her claims stem from the non-renewal of her employment relationship with the Academy.  Specifically, Ms. Dillon alleged that Defendants retaliated against her for exercising her freedom of speech and freedom of association rights, imposed an illegal prior restraint on her freedom of speech and freedom of association, and deprived her of procedural due process in determining not to renew her employment and by infringing a liberty interest in issuing a performance evaluation that adversely affected her chances for future employment.  She also asserted pendent claims for breach of contract and estoppel under Colorado law.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand.

## **Background**[1]

The Academy is a K-8 charter school in Longmont, Colorado.  It is chartered by, and operates within the boundaries of, the District.  Dr. Dorothy Marlatt was the principal of the Academy when Ms. Dillon was employed there as a paraprofessional.  The events giving rise to this case occurred from the fall of 1998 to the spring of 1999 and ultimately culminated in Ms. Dillon being non-

---

[1] This case is closely connected with the facts and claims arising in Brammer-Hoelter v. Twin Peaks Charter Academy, No. 06-1186, (10th Cir. 2007), a case brought by six former teachers of the Academy who resigned their positions in March 1999.  Throughout this opinion, we refer to relevant holdings reached in that case.

2

renewed in June 1999.

Ms. Dillon began working for the Academy as a paraprofessional in the fall of 1997.  She had no written employment contract.  Her initial performance evaluations were satisfactory.  During the summer of 1998, Ms. Dillon met with Dr. Marlatt to discuss her duties for the upcoming school year.  Her primary assignment was to work in the Academy's "resource room" where she and another paraprofessional were to provide literacy instruction, tutoring, and testing and to assist in the preparation of Individualized Learning Plans.  During this meeting, Dr. Marlatt also warned Ms. Dillon not to "gossip."

By the fall of 1998, the six teacher plaintiffs in Brammer-Hoelter had developed a number of concerns about the operation, management, and mission of the Academy.  They began to meet off-campus and after hours at local restaurants, in each others' homes, and in a church to discuss these concerns.  In response, Dr. Marlatt issued a series of orders directing the teachers not to discuss Academy matters outside of work with any person, including each other.  One such order was made during a mandatory faculty meeting.  Dr. Marlatt also told the teachers she would prefer that they not even associate with each other outside of school.

Ms. Dillon was a friend of the six teachers and participated in the off-campus meetings.  Although she never heard Dr. Marlatt's orders personally, one of the six teachers related them to Ms. Dillon.  Ms. Dillon contends that during

3

those gatherings, she and the teachers discussed dozens of topics ranging from unfair enforcement of the Academy's code of conduct to criticisms of the Academy's Board of Directors ("the Board"). See Aplt. Br. 3-4. At a December 10, 1998 meeting between the Board and Academy faculty and staff, Ms. Dillon complained that "middle school teachers did not have adequate help from paraprofessionals," and that employees would "find out things from memos instead of being told verbally." Aplt. App. at 152.

Despite Dr. Marlatt's orders, Ms. Dillon and the six teachers continued to meet off campus for the purpose of discussing various Academy matters. Eventually, the six teachers received less favorable performance reviews by Dr. Marlatt. The six teachers eventually submitted resignations on March 1, 1999. Dr. Marlatt then resigned on March 2, 1999. The Board subsequently offered Ms. Dillon the opportunity to move into one of the vacated teaching positions, but she declined the assignment. On April 15, 1999, the six teachers informed the Academy of their intent to sue, alleging numerous federal and state claims.

In May 1999, Ivan Adams, the Academy's interim administrator, recommended to the Board that Ms. Dillon and David Hardy, the other resource room paraprofessional, be non-renewed for the next school year. Mr. Adams also delivered a written evaluation of Ms. Dillon to the Board. Ms. Dillon received mediocre ratings in several categories. Mr. Adams concluded his evaluation by stating:

4

> I am concerned that Dawn has been vocal and demonstrative against Board policies, practices and the actual operation of the school. She has also taken issue with staff meetings that has helped to bring about a divisiveness among staff members. These actions are hurtful to the environment of a school.

Id. at 145. In an executive session, the Board accepted Mr. Adams's recommendation and voted not to renew Ms. Dillon's employment. In an affidavit, Board member Kathy Seitz testified that several Board members spoke up to affirm that Ms. Dillon should be non-renewed because she had associated with the six teachers and had been attending the off-campus meetings. Id. at 431-34.

In an evaluation conference on June 4, 1999, Mr. Adams informed Ms. Dillon that he recommended her non-renewal. Id. at 154. According to Ms. Dillon, Mr. Adams told her that he made the recommendation because she "associat[ed] with the six teachers who had left in March" and that she had a disruptive relationship with the other resource room paraprofessional, Mr. Hardy. Id. at 387. Ms. Dillon then complained that her non-renewal was unfair, and she demanded an explanation. Shortly thereafter, she gave notice of her intent to sue.

**Procedural History**

Ms. Dillon filed her lawsuit on December 27, 1999. Both Defendants filed motions for summary judgment on August 31, 2000. Over five years later, on March 28, 2006, the district court issued a seven-page order granting the summary

5

judgment motion filed by the Academy and dismissing the District's motion as moot.[2] See Dillon v. Twin Peaks Charter Acad., No. Civ. 99-K-2462, 2006 WL 827311 (D. Colo. Mar. 28, 2006). Addressing the freedom of speech and freedom of association retaliation claims, the district court held that the matters discussed by Ms. Dillon and the six teachers were not matters of public concern and that Ms. Dillon had failed to show an adverse employment action as a result of her speech or association. Id. at *2-3. The district court further held that Ms. Dillon had no protected property interest in continued employment and so could not sustain a procedural due process claim based on her non-renewal. Id. at *3. With regard to her liberty interest claim, the district court held that the Academy had never even published a false statement about Ms. Dillon. Id. Regarding her contract and promissory estoppel claims, the district court held that the claims failed because Ms. Dillon was an at-will employee with no contract of continued employment and because the Academy's informal grievance policy did not form an ongoing employment contract. Id. The district court then entered judgment for both Defendants on all claims.

On appeal, Ms. Dillon argues that the district court erred in determining

---

[2] The District argued that Ms. Dillon had failed to show a policy or custom on its part sufficient to create liability under § 1983 and that it had no contract with Ms. Dillon and made no representations to her. See Aplt. App. at 43-52. The district court considered these arguments moot given that it had already disposed of Ms. Dillon's claims on the merits in granting the Academy's motion for summary judgment.

that the matters she discussed with the teachers were not matters of public concern. She also argues that the retaliatory measures taken by the Academy were sufficient to constitute adverse employment actions. Consequently, she argues that both her freedom of speech and freedom of association retaliation claims should survive summary judgment. Ms. Dillon further argues that the Academy's actions constituted an illegal prior restraint, which the district court ignored. She argues that the district court erred in rejecting her procedural due process claims because it wrongly determined that certain promises made to her by the Academy did not create a protected property interest. Additionally, with regard to her liberty interest claim, Ms. Dillon argues that statements made by the Academy in her performance evaluation were published to the District and hindered her ability to obtain future employment. Finally, she argues that the district court erred in dismissing her pendent state law claims because it ignored evidence of the Academy's course of dealing and prior assurances.

## **Discussion**

### I.     Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. Timmerman v. U.S. Bank, 483 F.3d 1106, 1112 (10th Cir. 2007). Summary judgment is proper only if the record shows "that there is no genuine issue as to any material fact and that the moving

7

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Furthermore, because this case involves the First Amendment, we have "an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Citizens for Peace in Space v. City of Colo. Springs, 477 F.3d 1212, 1219 (10th Cir. 2007).

## II.    The First Amendment Claims

Ms. Dillon advances three discrete claims under the First Amendment. The first is that she was retaliated against for exercising her freedom of speech. The second is that she was retaliated against for exercising her freedom of association. The third is that Dr. Marlatt's blanket prohibition against discussing Academy matters in public and her statement to the six teachers encouraging them not to meet together in public constituted an illegal prior restraint on her speech and association. These are distinct claims. See Shrum v. City of Coweta, 449 F.3d 1132, 1138 (10th Cir. 2006) (distinguishing between freedom of speech and freedom of association retaliation claims); Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999) (distinguishing between freedom of speech retaliation claims and prior restraint claims).

### A.    Freedom of Speech Retaliation Claims

The district court rejected Ms. Dillon's freedom of speech retaliation claim on the legal grounds that the matters she and the six teachers discussed were not

8

matters of public concern and because she had not suffered an adverse employment action. As discussed in Brammer-Hoelter, while many of the matters discussed by Ms. Dillon and the six teachers either related to their employment duties or were not matters of public concern,[3] some of the matters discussed pass the combined Garcetti/Pickering analysis for freedom of speech retaliation claims. No. 06-1186, at 13-21; see Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). Furthermore, if Ms. Dillon's employment was not renewed because of her protected speech, such action is sufficient to constitute an adverse employment action for a First Amendment retaliation claim. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977) (noting that First Amendment retaliation claims do not depend on a property interest in continued employment); Smith v. Losee, 485 F.2d 334, 340 (10th Cir. 1973) ("It is now established that the nonrenewal of a nontenured public school teacher's one-year contract may not be

---

[3] Ms. Dillon argues that because many of the matters she discussed related to teachers and other paraprofessionals, the matters necessarily extended beyond her personal concerns and constituted matters of public concern. Aplt. Br. at 4-5; Aplt. Reply Br. at 4-5. We disagree. The fact that Ms. Dillon was supportive of the teachers and other paraprofessionals does not mean that her discussion regarding, inter alia, the lack of classroom supplies, internal personnel disputes, and her supervisor's performance constituted discussion on matters of public concern. Furthermore, because Ms. Dillon was effectively a "teacher's aide," see Aplt. Br. at 3, her official duties overlapped substantially with those of the teachers, rendering our Garcetti analysis in Brammer-Hoelter applicable to this case. See No. 06-1186, at 13-17.

9

predicated on his exercise of First and Fourteenth Amendment rights." (internal quotation marks omitted)). Consequently, Ms. Dillon's freedom of speech retaliation claim survives summary judgment to the same extent as do the teachers' similar claims. See Brammer-Hoelter, No. 06-1186, at 25.

**B.    Freedom of Association Retaliation Claim**

Ms. Dillon also raises a separate freedom of association retaliation claim, arguing that she suffered an adverse employment action for associating with the six teachers. The district court included this claim in its discussion of Ms. Dillon's freedom of speech retaliation claim, determining that the claim failed because she was not associating for the purpose of discussing matters of public concern and because she did not suffer an adverse employment action. Ms. Dillon was clearly associating for the purpose of discussing some matters of public concern. See id. at 20-21. Furthermore, as already discussed, her non-renewal is an adverse employment action sufficient to support a First Amendment retaliation claim. Accordingly, Ms. Dillon's freedom of association retaliation claim survives summary judgment to the same extent as her freedom of speech retaliation claim.

**C.    Prior Restraint Claim**

Ms. Dillon raises a prior restraint claim that is separate and distinct from her freedom of speech and freedom of association retaliation theories. Arndt v. Koby, 309 F.3d 1247, 1251 (10th Cir. 2002). "[U]nlike an adverse action taken in

response to actual speech, [a prior restraint] chills potential speech before it happens." Id. (citing United States v. Nat'l Treas. Employees Union ("NTEU"), 513 U.S. 454, 468 (1995)). The district court failed to address Ms. Dillon's prior restraint claim in its order. Accordingly, we remand this matter to the district court for a determination under NTEU and our related precedent.

## III. The Procedural Due Process Claim

Ms. Dillon argues that the Academy deprived her of procedural due process by terminating her employment without "just cause" and by failing to provide her with a statement of the reasons for her termination. "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). For this reason, a hearing is generally required before a person may be deprived of a protected interest. Smith v. Org. of Foster Families for Equality and Reform, 431 U.S. 816, 848 (1977).

We look to state law to determine whether a property interest in employment exists. Lighton v. Univ. of Utah, 209 F.3d 1213, 1221 (10th Cir.

11

2000). Such an interest can arise from "state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts." Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 536 (10th Cir. 1995). Absent some specific enactment to the contrary, an "at-will" employee has no property right in continued employment under Colorado law. See Cont'l Air Lines, Inc. v. Keenan, 731 P.2d 708, 711 (Colo. 1987); Holland v. Bd. of County Comm'rs, 883 P.2d 500, 505 (Colo. Ct. App. 1994).

As noted, Ms. Dillon had no written contract with the academy. Under Colorado law, she is therefore presumed to be an "at-will" employee. See Fremont Re-1 Sch. Dist. v. Jacobs, 737 P.2d 816, 820-21 (Colo. 1987). Indeed, the Academy's charter clearly states that "all persons who perform services for the Academy shall be considered 'at-will' employees or volunteers of the Academy." Aplt. App. at 102. The charter further states: "The Academy shall not have the authority, by virtue of its policies or procedures or other action of the Academy Board, to change the 'at-will' nature of the employment relationship." Id. at 103.

In Colorado, "a government entity's power to enter into contractual obligations is circumscribed by statute and ordinances." Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1190 (10th Cir. 2006). Such restrictions are incorporated into any contract the government entity makes. Id. Thus, any party contracting with a government entity is charged with constructive

12

knowledge of those restrictions and cannot claim justifiable reliance on statements to the contrary. Id.; see also Keeling v. City of Grand Junction, 689 P.2d 679, 680 (Colo. Ct. App. 1984) (imparting constructive knowledge that a city council could only act pursuant to the authority granted to it by the city's charter). We have applied this rule in a case concerning a school district policy requiring school board approval of certain expenditures. See Kirkland, 464 F.3d at 1190-91 (holding that the school district could not be bound by an administrator's promise to buy-out an employee's salary). Because the Academy's charter clearly states that the Academy cannot alter the at-will employment relationship, Ms. Dillon was an at-will employee and cannot claim justifiable reliance on promises or assurances to the contrary. Accordingly, any procedural due process claim based on her non-renewal must fail.

Ms. Dillon also claims that her procedural due process rights were violated when the Academy failed to process certain grievances she lodged. This claim fails because the Academy's grievance policy itself did not create a property interest. See Wells v. Hico Indep. Sch. Dist., 736 F.2d 243, 254 (5th Cir. 1984) (noting that a general grievance policy does not create a property interest because it "allows a means for employees . . . to voice their complaints [but] says nothing about either discharge or nonrenewal . . .").

Finally, Ms. Dillon claims that her rights were violated when Mr. Adams wrote in her performance evaluation that she was "vocal and demonstrative

13

against Board policies, practices, and the actual operations of the School . . . [and that her actions were] hurtful to the environment of a school." Aplt. App. at 409. She argues that these statements stigmatized her and prevented her from obtaining future employment with the District. Thus, she claims the statements amounted to a deprivation of a protected liberty interest in future employment without procedural due process.

"[W]hen a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created." Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 578 (10th Cir. 1996). To be actionable, such a statement must "impugn the good name, reputation, honor, or integrity of the employee." Id. at 579. The statement must also be false and "occur in the course of terminating the employee or must foreclose other employment opportunities." Id. Finally, the statement must be published. Id.

The district court determined that Ms. Dillon had failed to show the statements written by Mr. Adams were made public. See Bishop v. Wood, 426 U.S. 341, 348 (1976). She argues that because Mr. Adams wrote the statements on a St. Vrain Valley School District Evaluation Report for Secretaries/Clerks/Media Technicians/Aids, it is self-evident that Mr. Adams

14

published the statements to the District. We agree with the district court. Ms. Dillon presented no evidence that Mr. Adams, the Board, or any other employee of the Academy communicated the reasons for her non-renewal to anyone, much less the District. She presented no evidence that Mr. Adams submitted the evaluation to the District or anyone working there. Because Ms. Dillon has failed to show any evidence of publication, her liberty interest claim based on Mr. Adams's statements fails.

## IV. Breach of Contract and Estoppel Claims

Ms. Dillon premises her breach of contract claim on the Academy's supposed failure to follow its internal grievance policy. Specifically, she argues that the Academy was required to process and respond to any grievance or concern, written or oral, by a "super-majority of at least five members." Aplt. App. at 396. On the day she was informed of her non-renewal, Ms. Dillon complained orally to Mr. Adams and then complained to the Board. Because the Board never responded to this "grievance," argues Ms. Dillon, the Academy breached a contract with her.

As previously noted, Ms. Dillon was an at-will employee under Colorado law. So far as contract law is concerned, the Academy was free to terminate her employment at any time for any reason. Consequently, the Board was not obligated to explain the reason for its decision not to renew her employment. To hold otherwise would conflict with the at-will nature of Ms. Dillon's employment.

15

Ms. Dillon premises her estoppel claim on the fact that she voiced concerns at a Board meeting based upon an express promise that she would not be retaliated against for doing so, but that she was retaliated against anyway. Id. at 383-84. She devotes only two sentences of argument in her appellate brief to this issue, with no citation to authority whatsoever. See Aplt. Br. at 53. Consequently, we deem the claim waived. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005).

## V.      The Academy's Liability Based on Policy or Custom

The Academy argued below that it should not be liable under § 1983 because there was no institutional policy or custom depriving Ms. Dillon of her rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). It is true that § 1983 liability for an entity cannot be predicated on respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). Instead, it is necessary to show a direct causal link between the acts of the entity and the alleged constitutional deprivations. Ware v. Unified Sch. Dist. No. 492, 881 F.2d 906, 912-13 (10th Cir. 1989). Under appropriate circumstances, a single decision by policymakers can be sufficient to create liability under § 1983. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In its order, the district court never addressed the Academy's argument regarding the lack of a policy or custom, and the Academy is free to reassert it on remand.

16

## VI.  The District's Motion for Summary Judgment

The district court dismissed the District's motion for summary judgment as moot based on its determination that Ms. Dillon's claims failed on the merits.  As we have decided otherwise, the District is free to reassert this motion on remand.

We AFFIRM the district court's grant of summary judgment on the procedural due process, contract, and estoppel claims.  We REVERSE in part its grant of summary judgment on the freedom of speech and freedom of association retaliation claims.  We REMAND the prior restraint claim for further proceedings consistent with this opinion.  On remand, Defendants are free to assert those defenses not addressed by the district court in its order as well as any additional defenses that may exist.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge