**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 15, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

DAWN DILLON,

      Plaintiff–Appellant,

v.

TWIN PEAKS CHARTER ACADEMY;
ST. VRAIN VALLEY SCHOOL
DISTRICT NO. RE-1J,

      Defendants–Appellees.

No. 09-1458
(D.C. No. 1:99-CV-02462-CMA-BNB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

_____

Dawn Dillon appeals several rulings,[1] as well as the jury verdict, relating to her

suit against Twin Peaks Charter Academy ("Academy") and St. Vrain Valley School

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[1] Dillon has identified twenty-six issues on appeal. In reality, many of her claims are overlapping. While we identify the distinct non-frivolous arguments and address them herein, we will not search through the record for clarification on questions that counsel did not design to brief fully. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs . . . .") (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

District ("school district") for violation of her rights to free speech and association. We affirm.

**I**

This is the second appeal by Dillon arising from alleged free speech and free association violations by the Academy and the school district during the 1998-1999 school term. See Dillon v. Twin Peaks Charter Acad. (Dillon I), 241 F. App'x 490, 491-92 (10th Cir. 2007) (unpublished). The facts are closely related to those discussed in a case filed by several former teachers of the Academy alleging similar claims. See Brammer-Hoelter v. Twin Peaks Charter Acad. (Brammer-Hoelter I), 492 F.3d 1192, 1198-1201 (10th Cir. 2007); Brammer-Hoelter v. Twin Peaks Charter Acad. (Brammer-Hoelter II), 602 F.3d 1175, 1179-81 (10th Cir. 2010).

Dillon was a paraprofessional employed at the Academy, a public charter school in Longmont, Colorado. Prior to beginning the school year, Academy principal Dr. Dorothy Marlatt met with Dillon to discuss her assignment to the "resource room" where she was to conduct literacy testing and instruction. At the meeting, Marlatt admonished Dillon against "gossiping," a directive consistent with the Academy's Code of Conduct.

Throughout the fall, a group of several teachers and Dillon began to meet socially off-campus and discuss the school's policies. In response, Marlatt issued a directive at a faculty meeting forbidding teachers from discussing school matters outside of school. Dillon did not attend this meeting, but the directive was relayed to her by a teacher in attendance. Dillon and the teachers continued to meet in violation of Marlatt's orders.

They discussed, among other things, the restriction of speech by Marlatt and the Code of Conduct, the renewal of the Academy's charter, and school board elections.

Six of the teachers resigned on March 1, 1999. Marlatt resigned the next day. Dillon was offered one of departed teacher's positions. In solidarity with the resigned teachers, she refused the position. At the close of the school year, the interim principal Ivan Adams met with Dillon to discuss the following school year. In the evaluation he prepared, he expressed his concern that she was a divisive figure at the school and was "vocal and demonstrative against Board policies." At the meeting, Dillon claims that Adams admitted that he was recommending her non-renewal because of her association with the resigned teachers. The school board approved Dillon's non-renewal, ostensibly because it elected to eliminate the resource room altogether. Dillon re-applied to the Academy the following year, but was not hired.

Dillon sued the Academy and the school district in federal district court, alleging violations of her freedoms of speech and association, violation of her right to due process, breach of contract, and promissory estoppel. Her claims were all dismissed at summary judgment. Dillon v. Twin Peaks Charter Acad., No. Civ. 99-K-2462, 2006 WL 827311, at *3 (D. Colo. Mar. 28, 2006) (unpublished). We reversed the district court as to her freedom of speech and association claims. Dillon I, 241 F. App'x at 497.

Upon remand, the district court dismissed Dillon's claims alleging prior restraint, violation of the Colorado constitution, and all her claims against the school district. Dillon v. Twin Peaks Charter Acad., No. 99-cv-02462-JLK, 2008 WL 2410417 (D. Colo.

Jun. 11, 2008) (unpublished).  The case proceeded to trial on the free speech and free association claims against the Academy.  A jury returned a verdict for the Academy.

Dillon appeals the dismissal of her claims at summary judgment, several of the district court's rulings during the trial, the jury's verdict, and the award of costs to the Academy.

**II**

Dillon contends that three of the district court's rulings at summary judgment were in error.  She attacks:  (1) the dismissal of her claims under the Colorado Constitution; (2) the dismissal of her claims against the school district; and (3) the dismissal of her prior restraint claim.  We review the district court's grant of summary judgment de novo, applying the same standard as the district court.  Hackworth v. Progressive Cas. Ins. Co., 468 F.3d 722, 725 (10th Cir. 2006).  "[S]ummary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law."  Id.  In applying this standard, we examine the facts and draw all reasonable inferences from them in the light most favorable to the non-moving party.  Clinger v. N.M. Highlands Univ. Bd. of Regents, 215 F.3d 1162, 1165 (10th Cir. 2000).  "Because this case implicates First Amendment concerns, we have an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression."  Brammer-Hoelter II, 602 F.3d at 1184 (quotation omitted).

With respect to prior restraint, the success of such a claim depends on a showing that "potential speech" was "chill[ed] before it happen[ed]," Brammer-Hoelter I, 492

-4-

F.3d at 1209.  In order to hold the Academy liable for prior restraint, Dillon must show that the school had a custom or policy supporting the restriction, Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), or that an employee who is a final policymaker made the decision being challenged, Brammer-Hoelter II, 602 F.3d at 1189.  Thus, Dillon must show either that Marlatt was a final policy-maker, or that she was delegated authority by the Board and her actions were ratified by the Board.  Id.  As we held in Brammer-Hoelter II, Marlatt was not a final policymaker and her actions pursuant to any delegation were not ratified by the board.  Id. at 1190.  Dillon alleges that the Academy's Code of Conduct, which prohibits gossiping, justified denial of summary judgment.  However, she does not explain or contend that the Code chilled her speech.  See also id. at 1183-84 (rejecting the same argument by the teachers).  Dillon identifies no distinctions between the facts in her case and those before us in Brammer-Hoelter II.

Dillon's Colorado Constitution claim was dismissed in the first summary judgment order in this case, and was not revived on her first appeal.  Dillon I, 241 F. App'x 490.  As in Brammer Hoelter II, we will not "resurrect [p]laintiff's long-dead Colorado Constitution claim . . . ."  602 F.3d at 1182.  With respect to the claims against the school district, we held in Brammer-Hoelter II that there was no basis for municipal liability for the school district arising from the plaintiffs' dispute with the Academy.  Id. at 1190.  Dillon has presented no additional facts upon which to premise such liability.

**III**

Dillon attacks several rulings regarding the admission of evidence and the issuing or withholding of jury instructions.  She contends the district court erred by:  (1)

excluding evidence and refusing instruction on the presence of a "blanket ban" and "escalating restrictions" on free speech; (2) issuing an instruction limiting the definition of "matters of public concern"; (3) refusing an instruction concerning delegation of authority by the Board to Marlatt; (4) issuing an instruction explaining the theory of pretext in retaliation cases; (5) excluding evidence and refusing an instruction on the alleged blacklisting of Dillon; and (6) instructing the jury that freedom of association is protected only insofar as the purpose of the association was to further "ideas or beliefs."

We review evidentiary rulings for abuse of discretion. United States v. Batton, 602 F.3d 1191, 1196 (10th Cir. 2010). Absent such abuse, "we will affirm the rulings of the lower court on any ground that finds support in the record." Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1017 (10th Cir. 2004). Similarly, "we review a district court's decision to give a particular jury instruction for abuse of discretion." Frederick v. Swift Transp. Co., 616 F.3d 1074, 1079 (10th Cir. 2010) (quotation omitted). However, "we apply a de novo standard of review to determine the propriety of an individual jury instruction to which objection was made at time of trial" and to determine if the instruction properly stated the law. Smith v. United States, 555 F.3d 1158, 1165-66 (10th Cir. 2009).

**A**

Several of Dillon's claims clearly lack merit. With respect to evidence and instructions on the blanket ban and escalating speech restrictions, Dillon's arguments fail for two reasons. First, the district court allowed her to adduce evidence concerning the gag order and other actions by Marlatt and the board. Dillon testified to the gag order as

-6-

it was relayed to her by her supervisor, teachers testified to the gag order, and Dillon questioned Marlatt on the issuance of the order. The only evidence the trial court excluded was any hearsay from non-supervising teachers regarding Marlatt's statements. Dillon does not explain why this was in error. Further, the instruction Dillon requested, that the gag order was per se illegal, would have been inappropriate given that the illegality of the gag order goes to the question of prior restraint, not to Dillon's retaliation claim.

As to the instructions concerning matters of public concern and delegation of authority, these issues were settled by Brammer-Hoelter I and II. In Brammer-Hoelter I, we listed four topics discussed at the same meetings Dillon attended that qualified as matters of public concern. 492 F.3d at 1205-06. Indeed, we have already applied that holding to Dillon's case. Dillon I, 241 F. App'x at 494 & n.3. The district court did not abuse its discretion in limiting the jury instructions to these four topics. In Brammer-Hoelter II, we also rejected the delegation argument. We held that the Academy could not be held liable for Marlatt's directive under any theory, including the theory that the Board delegated authority to Marlatt and ratified her actions. Brammer-Hoelter II, 602 F.3d at 1190. Again, Dillon fails to identify any facts on either of these questions that distinguish her case from that of the teachers' suit in Brammer-Hoelter I and II.

Dillon also complains that the district court erred in its instruction on the concept of pretext in a retaliation context. She objects to an instruction stating that the jury was "not to second guess Defendant's decision." However, we have upheld precisely this language before. See Johnson v. City of Tulsa, 199 F. App'x 677, 683, 686 (10th Cir.

-7-

2006) (unpublished). Although not binding, the logic of <u>Johnson</u> is sound, and the instruction at Dillon's trial "properly informed the jury that part of its task was to determine if the [Academy] established a non-retaliatory reason that was not pretextual." <u>Id.</u> Combined with instructions concerning the types of speech that were protected, this instruction fairly explained "which incidents of expression deserve First Amendment protection." <u>Gardetto v. Mason</u>, 100 F.3d 803, 817 (10th Cir. 1996).

**B**

Dillon contends that the district court should have allowed testimony concerning her "blacklisting" by the Academy and issued a related jury instruction.[2] However, Dillon <u>was</u> allowed to adduce evidence that she was blacklisted at the Academy. Dillon was questioned regarding positions she applied to at the Academy after her non-renewal and two of her letters of interest were admitted as evidence.

---

[2] During this appeal, Dillon has attempted to characterize her blacklisting claim as including the Academy's blacklisting her <u>to the school district</u>, not merely within the Academy. Dillon claims she was not allowed to present this evidence because the district court granted the school district's motion for summary judgment. This is a separate issue, disposed of <u>supra</u>; her ability to make allegations about blacklisting by the Academy to the school district was not foreclosed by the dismissal of her claims against the school district. However, at trial, Dillon never sought to admit evidence or submit jury instructions based on this broader blacklisting theory. She did not object to the jury instructions on the grounds that she was unable to find employment in the <u>district</u>, only on the grounds that she was not rehired by the <u>Academy</u>. Thus, she has failed to preserve the issue for appeal. <u>See</u> <u>Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.</u>, 497 F.3d 1135, 1141 (10th Cir. 2007) (An issue is preserved only if a party "alerts the district court to the issue and seeks a ruling"; not if a party merely advances a related theory before the district court or presents the issue to the district court in a "vague and ambiguous" manner).

Dillon is correct, that the district court limited the definition of retaliation in the jury instructions to the Academy's failure to renew and did not include her allegation of failure to rehire. Failure to rehire may provide another basis for a First Amendment retaliation claim. Cf. Brammer-Hoelter I, 492 F.3d at 1207-08 (discussing the wide variety of employment actions that may constitute retaliation). However, in this case the trial court determined that the thrust of the case was failure to renew. This is consistent with Dillon's original complaint, which identified several facts relating to retaliation but did not frame them as separate claims. Thus, we cannot say that the court's refusal to give the particular instruction demanded by the plaintiff was an abuse of discretion. Cf. Frederick, 616 F.3d at 1079. Indeed, the facts upon which Dillon relied to show that her non-renewal was retaliatory are the same facts upon which she would have relied to prove that the Academy "blacklisted" her. In other words, there was nothing to suggest that the Academy's refusal to rehire Dillon was based on reasons distinct from its failure to renew her. Even if this were error, the same lack of distinguishing facts between the non-renewal and the non-hiring would render any error harmless. See id.

## C

Dillon argues that the district court erred in its instructions on the definition of free association. The instructions stated that the First Amendment gives individuals "the right to freely associate with others for the purpose of furthering beliefs and ideas." Dillon would prefer that we adopt an expansive interpretation of freedom of association, which would protect the right of any group to associate for non-expressive purposes. But as the district court properly noted, City of Dallas v. Stanglin, 490 U.S. 19 (1989), limited

the protection of association to situations involving intimate relationships or furthering another right under the constitution, such as free speech. Id. at 24. There is no "generalized right of free association." Id. Because Dillon never claimed that the school interfered with any of her intimate relationships, the district properly instructed the jury that Dillon had to show that the Academy's restriction on association intruded on another constitutional right.

**IV**

Dillon raises two issues concerning post-trial motions. First, she claims that the evidence was insufficient to support a verdict for the Academy. In order to challenge the sufficiency of evidence in a civil trial, a party must file a motion under Fed. R. Civ. P. 50(b) with the district court; failure to do so "forecloses [a] challenge to the sufficiency of the evidence." Unitherm Food Sys. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006). Dillon did not make such a motion.

She also contends that the district court improperly awarded costs to the defendants. Fed. R. Civ. P. 54(d)(1) allows the collection of non-attorney fee costs to the prevailing party. See In re Williams Secutities Litigation – WCG Subclass, 558 F.3d 1144, 1147 (10th Cir. 2009) (presumption in favor of awarding costs to prevailing party). Dillon argues that the district court was bound by its earlier ruling, at the summary judgment stage, that the parties "shall bear their own costs." However, "every order short of a final decree is subject to reopening at the discretion of the district judge." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 & n.14 (1983) (citing Fed. R. Civ. P. 54(b)); see also 18B C.A. Wright & A. R. Miller, Federal Practice and Procedure.

-10-

§ 4478.1 (2d ed. 2010) (discussing a trial court's wide discretion to reconsider or reopen earlier orders and rulings). The finality of the district court's initial decree was eliminated when we reversed the order granting summary judgment on certain claims. Thus, it was not an abuse of discretion for the district court to reconsider its earlier ruling and award costs to the defendants.

## V

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge