McKAY, Circuit Judge.
 

 Plaintiffs appeal the district court’s grant of summary judgment to Defendants on remand from our decision in
 
 Brammer-Hoelter v. Twin Peaks Charter Academy,
 
 492 F.3d 1192 (10th Cir.2007). In the previous appeal, we affirmed the district court’s entry of judgment for Defendants on most of Plaintiffs’ claims but remanded for further proceedings on their three First Amendment claims — (1) that they were subjected to an illegal prior restraint on speech and association; (2) that they were retaliated against for exercising their freedom of speech rights; and (3) that they were retaliated against for exercising their freedom of association rights. We stated that Defendants were free on remand “to assert those defenses not addressed by the district court in its opinion and order as well as any additional defenses that may exist.”
 
 Id.
 
 at 1212. On remand, the district court granted summary judgment to Defendants on all claims based on qualified immunity and principles of municipal liability. Plaintiffs appealed.
 

 Background
 

 From the fall of 1997 until the spring of 1999, Plaintiffs were employed as teachers
 
 *1180
 
 at Twin Peaks Charter Academy, a charter school within the St. Vrain Valley School District in Colorado. As more thoroughly detailed in our opinion in the first appeal and described as relevant below, Plaintiffs alleged that Defendants — the Academy, the school district, and the former administrator of the Academy, Dr. Dorothy Marlatt — violated Plaintiffs’ First Amendment rights while they were employed at the Academy by unlawfully prohibiting them from meeting together to discuss school matters and retaliating against them when they did so.
 

 It is undisputed that the Academy requested its employees, including Plaintiffs, to sign a “code of conduct” in which they promised to “refrain from actions or behavior harmful/hurtful to others at this school, including malicious gossip and similar activities.” (Appellants’ App. at 1473.) Taken in the light most favorable to Plaintiffs, the record also supports the conclusion that Dr. Marlatt verbally directed teachers not discuss school matters with anyone and expressed her preference they not meet together socially at all.
 
 [1]
 
 The record further supports the conclusion that Plaintiffs continued meeting and discussing school matters and Dr. Marlatt retaliated by giving them poor performance evaluations and imposing increasingly strict restrictions on their speech and association.
 

 In the spring of 1999, Plaintiffs each submitted letters of resignation to the Academy. During their two-week-notice period, Dr. Marlatt resigned. Plaintiffs then attempted to rescind their resignations, but the Academy Board of Directors voted against permitting them to do so. All but one Plaintiff also reapplied for a teaching position with the Academy, but none of them received a response.
 

 Plaintiffs then filed a complaint in the federal district court raising eleven claims for relief, including due process, First Amendment, and state law claims. The district court granted in part Defendants’ motion to dismiss certain of Plaintiffs’ claims, including their claim based on the Colorado Constitution, and Plaintiffs filed an amended complaint that omitted the dismissed claims. The district court subsequently granted Defendants’ motion for summary judgment on all claims.
 

 On appeal, we affirmed the grant of summary judgment on Plaintiffs’ due process, contract, and estoppel claims, holding Plaintiffs were at-will employees and Defendants did not violate their rights by declining to accept their attempts to rescind their resignations.
 
 Brammer-Hoelter,
 
 492 F.3d at 1209-11. As for Plaintiffs’ First Amendment allegations, we concluded Plaintiffs had asserted three distinct First Amendment claims, and we held the district court erred in failing to discuss Plaintiffs’ free association retaliation claim and prior restraint claims.
 
 Id.
 
 at 1208-09. We also held the summary judgment record supported the conclusion that Plaintiffs discussed four matters of public concern: “(1) whether the Academy’s code of conduct could restrict Plaintiffs’ freedom of speech, (2) Dr. Marlatt’s restrictions on speech and association, (3) whether the Academy charter would be renewed, and (4) the upcoming Board elections.”
 
 Id.
 
 at 1206. We concluded
 
 *1181
 
 the summary judgment record was sufficient to support a finding of retaliation for Plaintiffs’ speech and association based on these four protected areas of speech, and we therefore reversed in part the district court’s grant of summary judgment to Defendants on these claims.
 
 Id.
 
 at 1208-09. We also remanded the prior restraint claim for further proceedings.
 
 Id.
 
 at 1209. We specifically held Defendants were free on remand “to assert those defenses not addressed by the district court in its opinion and order as well as any additional defenses that may exist.”
 
 Id.
 
 at 1212.
 

 On remand, Dr. Marlatt asserted she was entitled to qualified immunity on Plaintiffs’ three surviving claims, and the Academy and school district asserted there was no basis under 42 U.S.C. § 1983 for holding them liable as municipal entities. The district court agreed and again granted summary judgment for all Defendants on all claims. This appeal followed.
 

 Discussion
 

 As an initial matter, we must consider whether Plaintiffs have standing to assert the claims before us in this appeal. Although this question was not raised by the parties nor addressed by the district court, we raise this issue
 
 sua sponte,
 
 as we must, “to ensure that there is an Article III case or controversy” with respect to each claim before us.
 
 People for the Ethical Treatment of Animals v. Rasmussen,
 
 298 F.3d 1198, 1202 (10th Cir.2002). “To establish Article III standing, the plaintiff must show injury in fact, a causal relationship between the injury and the defendants’ challenged acts, and a likelihood that a favorable decision will redress the injury.”
 
 Id.
 
 The first component of this test, the requirement of an “injury in fact,” requires “an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.”
 
 Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks, citations, and footnote omitted).
 

 Plaintiffs have three claims that survived the first appeal and are still at issue in this appeal: (1) prior restraints on speech and association; (2) free speech retaliation; and (3) free association retaliation.
 
 [2]
 
 We are satisfied that Plaintiffs have standing as to both of their retaliation claims. The prior restraint claim, however, requires some discussion. Specifically, we must consider whether Plaintiffs have shown the existence of an “injury in fact.” Although their arguments were not framed in terms of standing, both parties’ appellate briefs addressed the question of
 
 *1182
 
 whether Plaintiffs’ speech and association were chilled by the alleged prior restraints. We therefore find it appropriate to review this issue under our usual standard for determining standing at the summary judgment phase, as opposed to the pleading phase.
 
 Cf. Bischoff v. Osceola County, 222
 
 F.3d 874, 882 n. 8 (11th Cir.2000) (applying the usual summary judgment standard for standing, even though the district court had raised this issue
 
 sua sponte,
 
 because the plaintiffs briefed this issue and the case “had moved well beyond the preliminary stages”). Under this standard, “mere allegations of injury are insufficient,” and we look instead to whether the summary judgment record supports a conclusion that the plaintiffs have standing.
 
 Dep’t of Commerce v. U.S. House of Representatives, 525
 
 U.S. 316, 329, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999). Therefore, Defendants should prevail on standing grounds if “the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiffs ultimate burden of proving standing.”
 
 Day v. Bond,
 
 500 F.3d 1127, 1132 (10th Cir.2007).
 

 A prior restraint claim is distinct from a retaliation claim because it is based on a restriction that “ ‘chills potential speech before it happens,’ ” rather than “ ‘an adverse action taken in response to actual speech.’ ”
 
 Brammer-Hoelter,
 
 492 F.3d at 1209 (quoting
 
 Arndt v. Koby,
 
 309 F.3d 1247, 1251 (10th Cir.2002)). While a plaintiff cannot satisfy the injury-in-fact requirement for a prior restraint claim through the mere allegation that the restraint has a subjective chilling effect on his speech or association, “a chilling effect on the exercise of a plaintiffs First Amendment rights may amount to a judicially cognizable injury in fact, as long as it ‘arise[s] from an objectively justified fear of real consequences.’ ”
 
 Initiative & Referendum Institute v. Walker,
 
 450 F.3d 1082, 1088 (10th Cir.2006) (quoting
 
 D.L.S. v. Utah,
 
 374 F.3d 971, 975 (10th Cir.2004)).
 
 [3]
 
 Thus, for example, a plaintiff who challenges a statute on First Amendment grounds may satisfy the injury-in-fact requirement “by showing a credible threat of prosecution or other consequences following from the statute’s enforcement.”
 
 D.L.S.,
 
 374 F.3d at 975.
 

 Plaintiffs allege their exercise of their First Amendment rights was chilled by two unconstitutional prior restraints — Dr. Marlatt’s directives regarding their speech
 
 *1183
 
 and association and the Academy’s prohibition on “malicious gossip and similar activities.” Following the standard set out in
 
 D.L.S.,
 
 we consider for each restraint whether any evidence in the record supports the conclusion that the restraint actually chilled Plaintiffs’ speech and association and such chilling effect was caused by an objectively justified fear of real consequences.
 

 Taken in the light most favorable to Plaintiffs, the record supports the conclusion that Dr. Marlatt’s directives, while not chilling Plaintiffs’ speech and association entirely, did cause Plaintiffs to alter the exercise of their speech and association rights. Specifically, the record indicates Plaintiffs changed the location of some of their meetings and staggered their departures from meetings to avoid detection.
 
 [4]
 
 We conclude that these alterations in the place and manner of Plaintiffs’ speech and association are sufficient to show that Plaintiffs were chilled in the exercise of their First Amendment rights by Dr. Marlatt’s directives.
 
 Cf. Essence, Inc. v. City of Federal Heights,
 
 285 F.3d 1272, 1282 (10th Cir.2002) (finding no standing because, inter alia, the plaintiff had not “altered its behavior as a result of the [challenged] provision”).
 

 The record also supports the conclusion this chilling effect on Plaintiffs’ speech and association was caused by an objectively justified fear of real consequences. Taken in the light most favorable to Plaintiffs, the facts support the conclusion that Plaintiffs’ direct supervisor told them at a mandatory faculty meeting, in a very serious and angry tone, they were not to speak to anyone about school matters and she would prefer for them not to meet together socially at all. They feared this supervisor might give them poor evaluations or recommend they not be re-hired if she discovered they were violating these directives. As we noted in the previous appeal, poor performance ratings, especially for non-tenured teachers such as Plaintiffs, are adverse consequences that certainly could deter reasonable people from exercising their First Amendment rights.
 
 See Brammer-Hoelter,
 
 492 F.3d at 1208. Thus, we conclude the record supports the conclusion that Plaintiffs’ speech and association were chilled by an objectively justified fear of adverse consequences, satisfying the injury-in-fact requirement of standing.
 
 [5]
 
 We are convinced the causation and redressability requirements for standing are met as well, and we therefore hold that Plaintiffs have standing to challenge Dr. Marlatt’s directives.
 

 As for the Academy’s code of conduct, however, we conclude Plaintiffs do not have standing as to this alleged prior restraint. Plaintiffs have cited to nothing in the record indicating their speech or association was altered or deterred in any way by the code,
 
 [6]
 
 nor have we found any
 
 *1184
 
 such evidence in our
 
 de novo
 
 review of the record. Nothing in the record — nor, for that matter, in the allegations of Plaintiffs’ complaint — supports the conclusion this code caused Plaintiffs a concrete, judicially cognizable injury. We therefore dismiss for lack of jurisdiction Plaintiffs’ challenge to the Academy’s code of conduct.
 

 Having resolved the question of standing, we must now determine whether the district court correctly held that all of Plaintiffs’ remaining claims were barred by qualified immunity as to Dr. Marlatt and by principles of municipal liability as to the Academy and school district. We review the district court’s summary judgment decision
 
 de novo,
 
 applying the same standard as the district court.
 
 Hackworth v. Progressive Cas. Ins. Co.,
 
 468 F.3d 722, 725 (10th Cir.2006). “That is, summary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.”
 
 Id.
 
 “In applying this standard, we examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.”
 
 Clinger v. N.M. Highlands Univ. Bd. of Regents,
 
 215 F.3d 1162, 1165 (10th Cir.2000). Because this case implicates First Amendment concerns, we have “an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.”
 
 Citizens for Peace in Space v. City of Colo. Springs,
 
 477 F.3d 1212, 1219 (10th Cir.2007).
 

 I. Qualified Immunity
 

 We first consider the district court’s conclusion that Dr. Marlatt was entitled to qualified immunity on Plaintiffs’ three surviving claims. “Qualified immunity protects a government official from personal liability and the burden of having to go to trial unless he violated ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ”
 
 Andersen v. McCotter,
 
 100 F.3d 723, 729 (10th Cir.1996) (quoting
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, to defeat Dr. Marlatt’s qualified immunity defense, Plaintiffs must show both that her actions “violated a constitutional or statutory right” and that the rights she violated “were clearly established at the time of the conduct at issue.”
 
 Nelson v. McMullen,
 
 207 F.3d 1202, 1206 (10th Cir.2000) (internal quotation marks omitted). To meet this burden, they must “do more than simply allege the violation of a general legal precept”; rather, they are required to “demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant’s actions were clearly prohibited.”
 
 Jantz v. Muci,
 
 976 F.2d 623, 627 (10th Cir.1992).
 

 For a right to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.”
 
 Anderson v. Creighton,
 
 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in light of pre-existing law.”
 
 Jantz,
 
 976 F.2d at 627 (internal quotation marks omitted). This preexisting law must consist of either “a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts,”
 
 V-1 Oil Co. v. Means,
 
 94 F.3d 1420, 1423 (10th Cir.1996).
 

 
 *1185
 
 A. Prior restraints on speech and association
 

 Thus far we have referred, as the parties did, to Plaintiffs’ prior restraint claim as a single claim that Dr. Marlatt’s directives constituted an illegal prior restraint on speech and association. However, a closer consideration of the challenged directives suggests the alleged restraint on speech was separate and distinct from the alleged restraint on association. We therefore consider these alleged restraints separately.
 

 Plaintiffs allege Dr. Marlatt placed an illegal prior restraint on their association. However, even taken in the light most favorable to Plaintiffs, the facts in the record establish Dr. Marlatt only expressed a preference that Plaintiffs not meet together socially in public; she did not forbid them from meeting. Plaintiffs have cited to no authority, and we have found none, to suggest an employer who expresses a preference regarding employee association thereby imposes an unconstitutional prior restraint. We are not persuaded Dr. Marlatt violated Plaintiffs’ association rights by expressing this preference, and she certainly did not violate clearly established law by doing so. We accordingly conclude Dr. Marlatt is entitled to qualified immunity as to the alleged prior restraint on association.
 

 As for the alleged prior restraint on speech, we must first consider the scope of Dr. Marlatt’s directives and their restrictions on speech. Defendants argue that both of Dr. Marlatt’s directives were “focused on speech which could be overheard in public and endanger the school charter” and her directives would not be understood in context to constitute a prior restraint on all speech relating to school matters. (Appellees’ Br. at 28-29.) While the record might support such an inference, the record and the reasonable inferences to be drawn therefrom must be taken in the light most favorable to Plaintiffs for purposes of summary judgment. Defendants stress the apparently undisputed fact that Dr. Marlatt issued her first directive following an incident in which confidential student information was released to the public in violation of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g. However, this fact would not preclude a jury from reasonably concluding Dr. Marlatt’s directives nevertheless prohibited far more speech than the type of speech that provoked them. The record — taken in the light most favorable to Plaintiffs — supports the conclusion Dr. Marlatt’s directives were not limited to the improper discussion of such confidential information but were instead broad bans on the discussion of all “school matters” with anyone. (Appellants’ App. at 456.) For purposes of summary judgment, we must consider them to be such.
 

 In
 
 Luethje v. Peavine School District of Adair County,
 
 872 F.2d 352 (10th Cir.1989), we considered the constitutionality of a similar broad ban against the discussion of school matters by school employees. The plaintiff in
 
 Luethje,
 
 a cafeteria worker, made several complaints both internally and externally about allegedly unsanitary practices in the cafeteria and the school’s refusal to do anything about these problems.
 
 Id.
 
 at 353. In response, the school board issued the following rule for lunchroom personnel: “If you have any problems, consult [the principal]. Don’t take any school problems other places, or discuss it [sic] with others.”
 
 Id.
 
 (alterations in original) (internal quotation marks omitted). In considering the constitutionality of this policy, we stated that the question was “whether [this policy] potentially stifled speech of public concern, and, if so, whether the policy was permissible in any event, considering the interests of both the employee and the district.”
 
 Id.
 
 at 355. We concluded the plaintiffs actual
 
 *1186
 
 speech related to a matter of public concern, and we noted the rule “was broad enough to prohibit other speech of public concern.”
 
 Id.
 
 at 354. We then concluded the defendants’ “interest in efficient functioning of the school did not override [the] plaintiffs First Amendment rights to the extent necessary to justify the rule the board adopted.”
 
 Id.
 
 at 355. We acknowledged that “[guidelines for school employees’ public comments might in some circumstances be permissible,” but we concluded “the broadly worded rule here covered more ground than was necessary to satisfy the school’s interest in functioning efficiently.”
 
 Id.
 
 at 356.
 

 The defendants in
 
 Luethje
 
 conceded the prohibition on speech in that case was provoked by the plaintiffs speech on matters of public concern, while here Dr. Marlatt’s first directive, at least, was provoked by speech that was not protected by the First Amendment. However, we are not persuaded this fact is sufficient to distinguish
 
 Luethje
 
 from the instant case. In
 
 Luethje,
 
 we stated the proper question was whether the school’s policy
 
 “potentially
 
 stifled speech of public concern.”
 
 Id.
 
 at 355 (emphasis added). Dr. Marlatt’s directives — taken in the light most favorable to Plaintiffs — were certainly broad enough to potentially stifle speech of public concern. Indeed, all of the speech we recognized as involving matters of public concern in the first appeal — the school’s code of conduct, Dr. Marlatt’s directives on teachers discussing school matters, renewal of the school’s charter, and school board elections — appear to fall under her broad prohibition of speech about “school matters.” As for the second prong of the
 
 Luethje
 
 test, we conclude Dr. Marlatt’s broadly worded prohibitions covered more speech than necessary or permissible: Dr. Marlatt’s legitimate interests in ensuring the efficient functioning of the school and deterring teachers from disclosing confidential student information did not justify a ban on the discussion of all school matters.
 

 Defendants argue Plaintiffs cannot now complain about Dr. Marlatt’s directives when they did not contemporaneously ask for clarification or complain regarding the directives’ potential infringement on their First Amendment rights. For support, Defendants cite to a district court case from another circuit concluding that a plaintiffs interpretation of his employer’s speech restrictions was unreasonable and noting the plaintiff never requested clarification of the restrictions nor expressed his concerns about then1 reach to his employer.
 
 See Murray v. Wash. State Dep’t of Ecology,
 
 No. CV-06-142-RHW, 2008 WL 467340, at * 13 (E.D.Wash. Feb.19, 2008). This case appears to be distinguishable on the facts. Moreover, we find no support in our precedent for imposing the requirement that a government employee request clarification or complain to his supervisor before being permitted to file a complaint challenging his employer’s speech restrictions, and we decline to impose such a requirement in this case.
 

 Having determined for purposes of summary judgment that Dr. Marlatt’s directives violated Plaintiffs’ free speech rights, we must consider the second prong of the qualified immunity analysis — whether these rights were clearly established at the time. We find this question easy to resolve. More than twenty years ago, we held in
 
 Luethje
 
 that a school’s interest in efficient functioning does not justify a broad ban on the discussion of “school problems” with anyone except the school’s principal. The minor differences between the ban in
 
 Luethje
 
 and the ban in this case — the distinction between “school problems” and, in this case, the broader category of “school matters,” and the addition in
 
 Luethje
 
 of one individual with whom these matters could be discussed—
 
 *1187
 
 only make the unlawfulness of this ban more apparent. Although Defendants have asserted one governmental interest that the defendants in
 
 Luethje
 
 did not assert, an interest in deterring the disclosure of confidential student information, we are not persuaded that a reasonable official would conclude that this interest alone would justify almost the same restraint that we found unconstitutional in
 
 Luethje,
 
 particularly where this interest could easily be satisfied by a less sweeping restraint on speech. We therefore hold that Dr. Marlatt is not entitled to qualified immunity on the claim that her directives constituted an illegal prior restraint on speech.
 

 B. Retaliation for exercise of free speech and association rights
 

 We turn now to the question whether Dr. Marlatt is entitled to qualified immunity on Plaintiffs’ free speech retaliation and free association retaliation claims.
 
 [7]
 
 In the first appeal, we discussed Plaintiffs’ allegations that Dr. Marlatt gave them poor performance evaluations and imposed increasingly strict prohibitions on their speech and association, as well as their “suggestion] that they were blacklisted from future employment at the Academy because of their speech.”
 
 Brammer-Hoelter,
 
 492 F.3d at 1208. We then held there was enough evidence in the summary judgment record “to create a genuine dispute about whether these adverse actions occurred and whether they were motivated by Plaintiffs’ speech and association.”
 
 Id.
 
 In the instant appeal, Defendants argue the summary judgment record does not demonstrate Dr. Marlatt retaliated against Plaintiffs for engaging in protected speech. However, this issue was already resolved in the first appeal, and under the law-of-the-case doctrine we will not reconsider our prior holding.
 
 See Huffman v. Saul Holdings Ltd. P’ship,
 
 262 F.3d 1128, 1132 (10th Cir.2001). Therefore, we hold the first prong for defeating qualified immunity has been met-as we have already held, the summary judgment record supports the conclusion Dr. Marlatt violated Plaintiffs’ constitutional rights by taking adverse employment actions motivated by Plaintiffs’ exercise of their constitutional rights. We thus turn to the second prong of the qualified immunity analysis and consider whether Dr. Marlatt’s actions were in violation of clearly established law.
 

 The law was clearly established at the time of Dr. Marlatt’s actions that an employer could not take adverse actions such as these in retaliation for employees’ protected First Amendment activities.
 
 See Schuler v. City of Boulder,
 
 189 F.3d 1304, 1310 (10th Cir.1999) (holding an employer violated clearly established law by, inter alia, giving low performance ratings in retaliation for protected speech). Thus, the relevant inquiry is whether “the protected nature of [Plaintiffs’] speech [was] sufficiently clear that defendants should have been reasonably on notice” they were not entitled to regulate it.
 
 Melton v. City of Okla. City,
 
 879 F.2d 706, 729 (10th Cir.),
 
 reh’g in part granted on other grounds,
 
 888 F.2d 724 (10th Cir.1989).
 

 In arguing it was clearly established their speech was protected by the First Amendment, Plaintiffs focus narrowly on the specific matters we found to be protected in the first appeal. However, while our pre-existing precedent held that “each instance of speech” should be treated separately when there are “multiple instances of speech, each dealing with separate subjects,”
 
 Johnsen v. Independent School District No. 3,
 
 891 F.2d 1485, 1491-92 (10th
 
 *1188
 
 Cir.1989), our analysis indicated an “instance of speech” was distinct from a topic of speech. For example, in
 
 Johnsen
 
 we described
 
 Connick v. Myers,
 
 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), as involving a “single instance of speech,” even though this “instance of speech” — a questionnaire — covered multiple matters.
 
 Johnsen,
 
 891 F.2d at 1491-92. We held, when an instance of speech involves multiple distinct subjects, “the question of whether speech should be balanced separately is fact sensitive and depends on how interrelated are the different aspects of the speech.”
 
 Id.
 
 at 1492. Moreover, preexisting precedent indicated the analysis of whether speech is protected requires consideration of the “content, form, and context” of the statement.
 
 Connick,
 
 461 U.S. at 147-48, 103 S.Ct. 1684 (1983). If an employee’s principal purpose was to air a personal dispute, we held his speech was not entitled to protection even if it touched on a matter of general concern.
 
 See Moore v. City of Wynnewood,
 
 57 F.3d 924, 932 (10th Cir.1995). Our cases also held we would “focus[] on the motive of the speaker in analyzing whether the speech qualifies as a matter of public concern,
 
 i.e.,
 
 whether the speech
 
 was calculated
 
 to disclose misconduct or dealt with only personal disputes and grievances with no relevance to public interests.”
 
 Conaway v. Smith,
 
 853 F.2d 789, 796 (10th Cir.1988).
 

 In this case, a reasonable administrator could have concluded from our preexisting precedent that each meeting by school employees to discuss various school-related matters would be considered a “single instance of speech” and should be analyzed as a whole to determine whether it was protected by the First Amendment. Further, because the vast majority of speech that occurred at each meeting was unprotected speech relating to personal disputes with the school’s administration and other matters of solely internal significance,
 
 [8]
 
 we conclude controlling precedent would not have put a reasonable administrator on notice that the speech at each meeting, viewed in the aggregate, was protected by the First Amendment. We therefore hold Dr. Marlatt is entitled to qualified immunity because the protected nature of Plaintiffs’ speech was not clearly established at the time she took the alleged retaliatory actions.
 

 II. The Academy’s Municipal Liability
 

 We now turn to the question of whether Plaintiffs have demonstrated a basis for holding the Academy liable under § 1983 for any of their claims. Because the Academy is a public charter school, principles of municipal liability apply. That is, because the Academy is a local governmental entity, it cannot be held liable for the acts of its employees on a theory of
 
 respondeat superior.
 
 Rather, it will only be held liable for its own acts— acts it “has officially sanctioned or ordered.”
 
 Pembaur v. City of Cincinnati,
 
 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).
 

 “[Municipal liability under § 1983 attaches where — and only where— a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.”
 
 *1189
 

 Id.
 
 at 483-84, 106 S.Ct. 1292. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal “custom” so long as this custom amounts to “a widespread practice that, although not authorized by written law or express municipal policy, is ‘so permanent and well settled as to constitute a ‘custom or usage’ with the force of law.’ ”
 
 City of St. Louis v. Praprotnik,
 
 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970));
 
 see also Monell v. Dep’t of Soc. Servs.,
 
 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions— and the basis for them — of subordinates to whom authority was delegated subject to these policymakers’ review and approval.
 
 See Pembaur,
 
 475 U.S. at 480-81, 106 S.Ct. 1292;
 
 Praprotnik,
 
 485 U.S. at 123-27, 108 S.Ct. 915. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from “deliberate indifference” to the injuries that may be caused.
 
 City of Canton v. Harris,
 
 489 U.S. 378, 388-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
 

 A. Prior restraints on speech and association
 

 We first consider whether the summary judgment record demonstrates a basis for holding the Academy liable for the alleged prior restraint on Plaintiffs’ speech. As discussed above, we conclude Plaintiffs only have standing to challenge Dr. Marlatt’s directives and cannot assert a challenge to the Academy’s code of conduct as a prior restraint. We thus limit our consideration to Dr. Marlatt’s alleged directives that employees not to speak about school matters with anyone.
 

 In order for at least one basis for municipal liability to exist, the record must demonstrate (1) Dr. Marlatt was a final policymaker, (2) Dr. Marlatt’s directives amounted to or were part of a formal policy or informal custom of restraining protected speech, (3) Dr. Marlatt was delegated authority to make decisions on these matters by final policymakers, subject to their final review and approval, and these policymakers ratified her decisions, or (4) the Academy failed to adequately train or supervise Dr. Marlatt with deliberate indifference to the harms this failure might cause. Plaintiffs have not alleged Dr. Marlatt was not adequately trained or supervised. We thus consider only the first three possibilities for municipal liability, starting with the question of whether Dr. Marlatt was a final policymaker on matters of speech restrictions.
 

 The inquiry of whether a government employee is a policy-making official is a question of state law.
 
 See Praprotnik,
 
 485 U.S. at 124, 108 S.Ct. 915. In deciding whether an official is a final policymaker, “we are interested only in delegations of
 
 legal power.” Milligan-Hitt v. Bd. of Trs. of Sheridan County Sch. Dist. No. 2,
 
 523 F.3d 1219, 1227 (10th Cir.2008);
 
 see also Wulf v. City of Wichita,
 
 883 F.2d 842, 869 (10th Cir.1989)
 
 (“Praprotnik
 
 directs us to look only at where statutory policymaking authority lies, rather than where
 
 de facto
 
 authority may reside.”). Three factors help us decide whether an individual is legally a final policymaker for a municipality: “(1) whether the official is meaningfully constrained by policies not of that official’s own making; (2) whether the official’s decision[s] are
 
 final
 
 — i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official’s grant of authority.”
 
 Randle v. City of Aurora,
 
 69 F.3d 441, 448 (10th
 
 *1190
 
 Cir.1995) (internal quotation marks omitted). In this case, Colorado law, the charter contract, the Academy’s bylaws, and the administrator’s employment contract all make clear the Academy Board was the sole final policymaker on school matters and all of Dr. Marlatt’s decisions were legally constrained by Board policies. Thus, Dr. Marlatt was not a final policymaker for the Academy.
 

 Because Dr. Marlatt was not a final policymaker, the directives issued by her did not constitute a formal Academy policy. Moreover, the record does not demonstrate the existence of a “custom” of restraining protected speech that was widespread and “so permanent and well settled,”
 
 Praprotnik,
 
 485 U.S. at 127, 108 S.Ct. 915, as to constitute the Academy’s policy over time. Therefore, the Academy will only be subject to municipal liability if the record supports the conclusion the Academy Board delegated authority to Dr. Marlatt to make decisions on these matters, subject to the Board’s final review and approval, and the Board ratified her decisions and the basis for them.
 

 We conclude the record does not support the conclusion the Board ratified Dr. Marlatt’s directives on employee speech. As Plaintiffs themselves point out, when this issue came up at a Board meeting, the Board member who spoke on the issue expressed his opinion Dr. Marlatt “was overstepping her bounds” by issuing such instructions. (Appellants’ App. at 811.) We are not persuaded that Dr. Marlatt’s non-specific testimony that every act she took in dealing with the teachers was authorized by the Board is sufficient to create a genuine issue of material fact as to whether the Board ratified the directives she denies giving, and no other evidence in the record suggests the Board ratified Dr. Marlatt’s directives. We therefore conclude the summary judgment record does not demonstrate a basis for holding the Academy liable under § 1983 on Plaintiffs’ prior restraint claim.
 

 B. Retaliation for exercise of free speech and association rights
 

 We turn now to the question whether the Academy may be held liable under § 1983 on Plaintiffs’ retaliation claims. For many of the same reasons discussed above, we conclude the Academy may not be held liable for Dr. Marlatt’s alleged retaliatory actions of imposing increasingly strict prohibitions on speech and association and giving employees undeservedly poor evaluations. Dr. Marlatt was not a final policymaker for the Academy, and nothing in the record suggests the Academy ratified these alleged actions. Nor do we see any other basis for holding the Academy liable for Dr. Marlatt’s alleged retaliatory actions. We thus focus only on the question of whether the Academy may be held liable for its own alleged action of barring Plaintiffs from future employment at the Academy.
 

 In the previous appeal, we concluded there was sufficient evidence to create a genuine dispute about whether blacklisting had occurred and whether it was motivated by Plaintiffs’ speech and association. Under the law-of-the-case doctrine, we will not reconsider that previous holding. Defendants contend the record does not show Plaintiffs’ applications for re-employment came before the Academy Board for a decision; therefore, Defendants argue, there is no evidence the alleged decision to blacklist Plaintiffs from further employment was made by a final policymaker. However, the president of the Board stated in an affidavit that the Board “received applications for employment from several of the plaintiffs.” (Appellants’ App. at 275.) We conclude this evidence is sufficient to create a genuine issue of material fact as to whether the Board decided to
 
 *1191
 
 take the alleged retaliatory action against these Plaintiffs. We therefore reverse the district court’s grant of summary judgment to the Academy for the retaliation claims of those Plaintiffs who reapplied for employment at the Academy. Because Plaintiff Melissa Perry did not reapply for employment, we see no basis for municipal liability against the Academy on her retaliation claim, and we therefore affirm the district court’s grant of summary judgment in favor of the Academy on her retaliation claim.
 

 III. The School District’s Municipal Liability
 

 Plaintiffs base their prior restraint and retaliation claims against the school district almost entirely on actions taken by the Academy Board, Dr. Marlatt, and other Academy employees. However, it is clear from the record none of these individuals were final policymakers for the school district. Furthermore, nothing in the record suggests any policymaker at the school district was even aware of the alleged prior restraints and retaliatory acts. We see nothing in the record supporting a basis for municipal liability against the school district based on actions taken by the Academy Board, Dr. Marlatt, or any other Academy employees.
 

 Plaintiffs also allege the school district itself retaliated against them by blacklisting them from future employment in the district. Plaintiffs have cited to no facts supporting this allegation. Moreover, nothing in the record suggests anyone at the school district knew of Plaintiffs’ speech and association. Absent such evidence, Plaintiffs cannot succeed in showing a genuine dispute of fact as to whether this speech and association was a motivating factor in any adverse employment actions by the school district.
 
 See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
 
 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). We agree with the district court that Plaintiffs have demonstrated no basis for holding the school district liable on any of their claims.
 

 Conclusion
 

 For the foregoing reasons, we DISMISS Plaintiffs’ prior restraint claim to the extent it challenges the Academy’s code of conduct rather than Dr. Marlatt’s directives. We REVERSE in part the district court’s grant of summary judgment to Dr. Marlatt on Plaintiffs’ prior restraint claim. We also REVERSE in part the grant of summary judgment to the Academy on Plaintiffs’ free speech and free association retaliation claims. The remainder of the district court’s order is AFFIRMED.
 

 [1]
 

 . We emphasize that we are not expressing any opinion on whether Plaintiffs will ultimately succeed in proving these facts. Plaintiffs’ briefs express some confusion on this point, as they repeatedly and incorrectly assert that we found certain facts in the first appeal. It is not within the province of this court to find facts on appeal, nor is fact-finding an appropriate exercise for any court on a motion for summary judgment. In this appeal, as in the prior one, we consider only the legal question of whether the record, taken in the light most favorable to Plaintiffs as non-movants, entitles Defendants to judgment as a matter of law.
 

 [2]
 

 . We summarily dispose of Plaintiffs’ various arguments that the district court improperly expanded or limited the issues before it on remand, as all of these arguments lack merit. The district court did not err by failing to resurrect Plaintiffs’ long-dead Colorado constitutional claim, whose dismissal in January of 2000 was never appealed to this court. Plaintiffs' assertion that the district court erroneously ignored their free association retaliation claim on remand is simply incorrect, as is their contradictory argument that the court erred by ruling on this issue because it should have gone straight to trial. The district court correctly followed our mandate on remand by considering whether Defendants' asserted defenses applied to this claim. Plaintiffs' argument that they were free to reargue the merits of their due process and state law claims against the school district is likewise premised on a misunderstanding of our opinion in the first appeal. Our statement that the school district was entitled to reassert on remand its original motion for summary judgment did not authorize Plaintiffs to reassert claims against this Defendant that we had rejected on the merits. The district court appropriately followed our remand order by considering the defenses asserted by Defendants as to the three claims that survived the first appeal, while not considering any previously dismissed claims.
 

 [3]
 

 . We note that this standard appears to be in conflict with our statement in
 
 National Council for Improved Health v. Shalala,
 
 122 F.3d 878 (10th Cir.1997), that cases involving the "concept of 'chilling effect’ ” require a concrete harm “separate from the 'chill' itself.”
 
 Id.
 
 at 884 n. 9. However, we are not persuaded that this dicta in
 
 National Council
 
 requires us to reconsider the standard set forth in
 
 D.L.S.
 
 The D.C. Circuit case on which our statement in
 
 National Council
 
 was based,
 
 United Presbyterian Church v. Reagan,
 
 738 F.2d 1375 (D.C.Cir.1984), used the phrase "chilling effect” to refer exclusively to the chilling of a third party's speech from an overbroad statute.
 
 See id.
 
 at 1379 ("[T]o require that the harm of ‘chilling effect’ actually be suffered by the plaintiff would destroy the whole purpose of the concept, which is to enable even those who have not been chilled to vindicate the First Amendment interests of those who have.”). Requiring a plaintiff to show a harm separate from the chilling effect on others is entirely consistent with Article Ill's standing requirements. Where we use the phrase "chilling effect” to describe the deterrent effect a governmental action has on a plaintiff's own speech, however, this analysis seems inapt. Moreover, to the extent
 
 National Council
 
 could be read to require a harm separate from a chilling effect on a plaintiff’s own speech, it is inconsistent with prior precedent,
 
 see, e.g., Wilson v. Stocker,
 
 819 F.2d 943, 946 (10th Cir.1987), and therefore lacks precedential value.
 
 See Haynes v. Williams,
 
 88 F.3d 898, 900 n. 4 (10th Cir.1996) (“[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.”)
 

 [4]
 

 . The record further suggests certain Plaintiffs were deterred from speaking, at least for a time and at least with some individuals. This deterrence may also amount to a constitutionally justiciable injury. However, because we conclude that the alterations in Plaintiffs' meeting times and places were sufficient to confer standing to all Plaintiffs, we do not consider other potential grounds for standing as to individual Plaintiffs.
 

 [5]
 

 . We note this conclusion is separate from the question whether Plaintiffs' speech and association rights were actually violated.
 
 See Walker,
 
 450 F.3d at 1093 ("For purposes of standing, we must assume the Plaintiffs’ claim has legal validity.”).
 

 [6]
 

 . In general, plaintiffs may also have standing if they face an imminent, credible threat that a statute or other governmental restriction will be enforced against them in the future.
 
 See Ward v. Utah,
 
 321 F.3d 1263, 1267 (10th Cir.2003). Here, however, Plaintiffs were no longer employed by the Academy at the time they filed suit and thus faced no threat that
 
 *1184
 
 the code would be enforced against them in the future.
 

 [7]
 

 . We address these two claims together because “their analysis is effectively indistinguishable.”
 
 Brammer-Hoelter,
 
 492 F.3d at 1209.
 

 [8]
 

 . At the district court level, Plaintiffs identified fifty-two topics of conversation discussed in their meetings. Out of the “dozens of matters” mentioned, "the vast majority ... related to Plaintiffs' duties as teachers and/or addressed internal personnel and workplace disputes.”
 
 Brammer-Hoelter,
 
 492 F.3d at 1199. Only four matters discussed in their conversations were protected by the First Amendment,
 
 id.
 
 at 1206, and the summary judgment record does not suggest that any of these protected matters was ever the primary focus of one of Plaintiffs' meetings.