FILED
United States Court of Appeals
Tenth Circuit

**January 13, 2022**

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

MICHAEL JACKSON; MICHAEL
BRITTON; SONYA LEYBA; ROBERT
PABLO; BRET GAREGNANI,

    Plaintiffs - Appellants,

and

FRATERNAL ORDER OF POLICE
LODGE 27; EDWARD KELLER,

    Plaintiffs,

v.

THE CITY AND COUNTY OF
DENVER,

    Defendant - Appellee.

No. 20-1051
(D.C. No. 1:18-CV-02620-CMA-NYW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **BACHARACH**, and **EID**, Circuit Judges.

    Appellants are members of the Fraternal Order of Police Lodge 27 ("FOP").

The FOP is the union representing sheriff's deputies employed by the City and

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

County of Denver, Colorado ("Denver"). They filed a 42 U.S.C. § 1983 action against Denver. They claim that Denver is liable for a violation of their First Amendment rights. The Denver Sheriff allegedly committed the violation. Specifically, they allege that the Sheriff thwarted their effort to increase the amount of money automatically deducted from the paychecks of sheriff's deputies by the FOP. The FOP had hoped to use the money to fund a campaign to make the office of Denver Sheriff an elected position.

The district court granted summary judgment to Denver. It concluded that municipal liability did not attach because the Denver Sheriff did not have final policymaking authority over payroll deduction matters, and that he also did not ratify the decision to stop the increased deductions. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's grant of summary judgment to Denver.

**I**

Denver's Mayor appoints the Denver Sheriff. The FOP wanted to change that. In the spring of 2018, it began to support a grassroots campaign to amend the Denver City Charter to make the Sheriff an elected position. The FOP wanted to raise money to fund the campaign, so it decided to increase the amount of funds automatically deducted from its members' paychecks by $50 for three months. The FOP told its members that this three-month increase was a "special

2

assessment" to finance the campaign.  Aplts.' App. at 116 (Letter, dated Apr. 21, 2018).

To make sense of the § 1983 action that eventually followed, we provide a brief overview here of some of the key components of Denver's municipal government.  The Denver City Charter establishes all of the major executive departments that help to govern the city.  The Department of Safety has "control of the departments of sheriff, fire and police."  Denver, Colo., City Charter § 2.6.1.[1]  The Department of Safety is led by a Manager of Safety who reports to the Mayor.  The Denver City Charter vests certain authority in the Sheriff.  It states:

> The Sheriff shall, subject to the supervision of the Manager of Safety, have full charge and custody of the jails of the city and county and the prisoners in the jails, transport prisoners, and execute writs and attend the several courts of record held in the city and county.  In addition thereto, the Sheriff and the Sheriff Department shall exercise and perform the powers and duties now required or that may hereafter be required by the Constitution or the general laws of the state to be performed by the county sheriff, to the extent any such powers or duties are approved by the Manager of Safety.

---

[1]    Neither party provided the full Denver City Charter in the appendix submitted on appeal.  We take judicial notice of it now.  *See Melton v. City of Oklahoma City*, 879 F.2d 706, 724 (10th Cir. 1989) (taking judicial notice of the Oklahoma City Charter), *overruled on other grounds by* 928 F.2d 920 (10th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 906 (1991); *see also Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503–04 (10th Cir. 1997) (holding district court properly took judicial notice of a Denver city ordinance).

*Id.* § 2.6.4.  The Department of Safety has a Human Resources office that handles certain personnel matters for the Sheriff's Department—as well as for the police and fire departments.

Denver also has a separate Department of Finance.  It exercises "powers and duties related to the financial operations and interests of the City and County."  *Id.* § 2.5.1.  The Department is led by a Manager of Finance, "the chief financial officer of the City and County."  *Id.* § 2.5.2.  Within the Department's controller's office is a payroll division.  That division is responsible for managing the payroll of all Denver employees, including notably those in the Sheriff's Department.  Municipal employees' unions work with the payroll division to deduct and collect their members' dues.

When the FOP decided to impose the new special assessment, it notified the payroll division and requested the three-month increase in the payroll deduction.  The FOP and Denver have a collective bargaining agreement ("CBA") that obligates Denver "to deduct FOP dues . . . from the pay of such employees who individually request in writing that such deductions shall be made on a form agreeable to the City."  Aplts.' App. at 76 (Collective Bargaining Agreement, 2018–2019).  The FOP must "certify to the City the amounts to be deducted."  *Id.*  Once certified, Denver

4

officials cannot refuse to deduct dues and to transmit them to the FOP. *See id.* at 258 (Deposition of Jennifer Cockrum, dated Sept. 10, 2019).

Upon receiving notification from the FOP, the payroll division deducted an additional $50 from FOP members' next paychecks. Municipal officials later insisted that this initial decision was based on an incorrect assumption that the additional amount was simply an increase in ordinary dues and not a special assessment. *See* Aplts.' App. at 335 (Letter, dated July 16, 2018) ("[I]nitially the City agreed to deduct these funds from FOP members based upon an erroneous belief that these were 'dues' for those members.").

Eventually, Denver reversed course and refused to deduct the $50 for the next two months. Ms. Jennifer Cockrum, Human Resources Director for the Department of Public Safety, sent a letter to the FOP explaining why. Ms. Cockrum said that the "additional assessment is not a regular dues payment." Aplts.' App. at 156 (Letter, dated June 13, 2018). Instead, as the letter explained, municipal officials concluded that the additional $50 monthly charge was a non-dues special assessment that Denver was not obligated to collect and transmit to the FOP. Ms. Cockrum stated that the "additional dues assessment" would not be deducted "without express consent from the employee." *Id.* Ms. Cockrum further indicated that her

office had received numerous complaints from deputies seeking to avoid the increased deduction.

In response to Ms. Cockrum's letter, sheriff's deputy Michael Jackson—an appellant in this case and the FOP's president—filed a formal grievance under the CBA's grievance process. That process has three steps. First, a grievant must present a written grievance to the applicable division chief, who must in turn provide a written response within fifteen calendar days. If the grievance is not resolved, then at the next step the grievant must raise the issue with the Sheriff, who must hold a meeting with the grievant and issue a written response. The final step in the process—if the grievance is not resolved at step two—is for the grievant to demand binding arbitration by a three-member arbitration board. *See* Aplts.' App. at 108–10.

In his written grievance, FOP President Jackson asserted that Denver officials violated the CBA by refusing to process the increased payroll deduction. At step one, the Chief of Operations in the Sheriff's Department declined to render a formal decision. Instead, after concluding that the matter "affects all FOP members," she forwarded the grievance along to the Sheriff. Aplts.' App. at 354 (Email, dated June 27, 2018). At step two, the Sheriff met with FOP President Jackson and later sent him a written response. The Sheriff explained that after "looking at complaints from

6

members and a copy of the letter sent to [FOP] membership regarding the additional deductions, it was determined that this was a special assessment, and not dues." Aplts.' App. at 335–36.  The Sheriff therefore denied FOP President Jackson's grievance.  More specifically, the Sheriff purported to "den[y] [the FOP's] request for the City to take deductions for a temporary special assessment outside of membership dues." *Id.* at 336.  The Sheriff said that the CBA did not require it.  And the Sheriff further concluded that because the effort to collect a special assessment to fund the campaign was "a matter between the FOP and its members, the City will not assist in those efforts." *Id*.

Instead of moving to step three of the grievance process, Appellants filed a § 1983 action against Denver in October 2018.  They claimed that the Sheriff violated their First Amendment freedoms of speech and association by declining to deduct the additional $50 per month, and that Denver was liable for this constitutional violation.  *See* Aplts.' App. at 26–43 (Am. Compl., filed Dec. 17, 2018).

At the end of discovery, the district court granted Denver's motion for summary judgment.  The court found that the deputies failed to establish municipal liability for the alleged First Amendment violation.  It noted that "to prove a § 1983 claim against a municipality, 'a plaintiff must show the existence of a municipal policy or custom which directly caused

7

the alleged injury.'" *Id.* at 535 (Order Granting Def.'s Mot. for Summ. J., dated Jan. 27, 2020) (quoting *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017)). The court then explained that Denver could be held liable for the alleged constitutional violation only if the deputies first showed that a municipal employee "with final policymaking authority" either made the decision not to deduct the additional fees or ratified the decision after a subordinate made it. *Id.*

And the court found that the Sheriff did not have final policymaking authority over "payroll deductions from employee paychecks." *Id.* at 537. It further found that, as a result, the Sheriff "could not have ratified" the decision to stop the additional deduction. *Id.* Therefore, the court concluded that municipal liability did not attach to Denver, and granted summary judgment in Denver's favor. The deputies then timely filed this appeal.

## II

We "review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)). "We view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor." *Osborne v.*

*Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a).

We will first summarize the legal standard for municipal liability under § 1983. Then we will explain why Denver cannot be held liable for the alleged constitutional violation by the Sheriff.

## A

"A municipality is not liable solely because its employees caused injury." *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). Instead, to establish municipal liability, a plaintiff must show both "the existence of a municipal policy or custom" and also "a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). A municipal policy or custom may take many forms: "a formal regulation or policy; a widespread, permanent, and well-settled custom; a decision by an employee with final policymaking authority; a final policymaker's ratification of both an employee's unconstitutional actions and the basis for them; or the deliberately indifferent failure to appropriately hire, train, supervise, or discipline employees." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019); *see also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). Of central importance here, a municipal

policy or custom can amount to "a deliberate choice to follow a course of action [that] is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Appellants base their § 1983 claim against Denver on two grounds. First, they argue that the Sheriff made the decision to halt the additional payroll deductions and did so with final policymaking authority. Second, alternatively, they claim that the Sheriff—again, acting with final policymaking authority—ratified the decision to stop the new deductions.

In determining whether an official has final policymaking authority, we look to state and local law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ("[T]he identification of policymaking officials is a question of state law."); *see also Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189 (10th Cir. 2003) ("[I]n identifying final municipal policymakers, the courts must examine state laws and local ordinances or regulations to determine where the statutory law places the responsibility for making law or setting policy in a particular area."). In undertaking this inquiry, "we are interested only in delegations of *legal power*." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1227 (10th Cir. 2008); *see also Wulf v. City of Wichita*, 883 F.2d 842,

10

869 (10th Cir. 1989) ("*Praprotnik* directs us to look only at where statutory policymaking authority lies, rather than where *de facto* authority may reside.").

As we look to state and local law, "[t]hree factors help us decide whether an individual is legally a final policymaker for a municipality: '(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision[s] are final—*i.e.*, are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.'" *Brammer-Hoelter*, 602 F.3d at 1189 (second alteration in original) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir.1995)); *see Patel v. Hall*, 849 F.3d 970, 979 (10th Cir. 2017).

Moreover, "a municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010), *cert. denied*, 564 U.S. 1019 (2011). That is, "[i]f the *authorized policymakers* approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127 (emphasis added); *see Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020).

11

**B**

Reviewing the matter de novo, we conclude that the Sheriff is not a final policymaker with respect to payroll deductions. Therefore, any decision he may have made regarding the deductions at issue cannot establish municipal liability. And because the Sheriff did not have final policymaking authority over the deductions, he also could not have ratified any decision to stop the increased deductions. In short, neither one of Appellants' two theories of municipal liability can sustain their § 1983 claim against Denver.[2]

**1**

We first address why the Sheriff is not a final policymaker with respect to payroll deduction matters. Here, "[o]ur analysis begins with a review of relevant [state] law, including city ordinances and regulations, to determine which officials had responsibility for setting policy in the

---

[2]    Denver argues that Appellants failed to preserve their argument that the Sheriff was a final policymaker because they failed to frame it before the district court under the three-factor standard set forth in *Brammer-Hoelter*. *See* Aplee.'s Resp. Br. at 7–9. Although Appellants did not expressly invoke *Brammer-Hoelter* in their response to Denver's motion for summary judgment, they did argue both that the Sheriff was a final policymaker on payroll deductions and also that even if Ms. Cockrum "alone made the decision to cancel the dues deduction, her decision was ratified by a final policymaker, i.e., the Sheriff." Aplts.' App. at 245 (Pls.' Resp. to Def.'s Mot. for Summ. J., filed Nov. 19, 2019). We assume without deciding that Appellants properly preserved for our review their present arguments regarding the Sheriff's final policymaking authority. However, as we discuss *infra*, these arguments are nevertheless unavailing.

relevant area of city business." *Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998), *abrogated in part on other grounds by Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001). As noted, in *Brammer-Hoelter*, we outlined three relevant factors for determining whether an employee is a final policymaker. *See* 602 F.3d at 1189. All three factors weigh against us concluding that the Sheriff was the final policymaker for payroll deductions.

First, the Sheriff is "meaningfully constrained" on payroll-deduction-related actions by the Denver City Charter. *Id.* Put bluntly, under the City Charter, the Sheriff has no legal authority to determine whether deductions are taken from employees' payroll. The Sheriff's lack of authority in this area is underscored by comparing and contrasting the authority that the Charter gives the Sheriff with the authority that it accords to the Department of Finance; the latter's authority certainly does implicate the area of payroll deductions.[3]

Recall that the City Charter places the Sheriff in "full charge and custody of the jails of the city and county" and vests the Sheriff with certain law enforcement responsibilities and, more generally, other "powers

---

[3] We see no need to opine definitively on the identity of the official who exercises final policymaking authority over payroll-deduction-related decisions in Denver. What matters for purposes of this appeal is our conclusion—based primarily on consideration of the Charter's provisions—that the Sheriff does not exercise such authority.

13

and duties . . . required by the Constitution or the general laws of the state to be performed by the county sheriff." Denver, Colo., City Charter § 2.6.4. The Department of Finance, on the other hand, is granted authority directly relevant to payroll concerns. Specifically, that department exercises the "powers and duties related to the financial operations and interests of the City and County." *Id*. § 2.5.1. In particular, only the Manager of Finance may "register and sign all checks or warrants authorizing a draw upon the accounts of the City and County." *Id*. § 2.5.3.

Simply put, the Denver City Charter thoroughly constrains the Sheriff from wielding authority—much less final policymaking authority—over payroll-deduction-related decisions. And, even if they had the power to do so, the CBA's provisions do not have the effect of vesting the Sheriff with authority over such deduction decisions. The CBA merely provides that "the City" will deduct permissible fees from members and transmit them to the FOP. Aplts.' App. at 76. It nowhere states or implies that the Sheriff has any oversight or authority over payroll deduction decisions. At most, the CBA merely empowers the Sheriff to hear a payroll-related grievance.

In this regard, turning to the second *Brammer-Hoelter* factor, it is important to underscore that even the grievance decisions that the Sheriff might make that implicate payroll deductions are not "final." That is,

14

under the CBA, they are "subject to . . . meaningful review." *Brammer-Hoelter*, 602 F.3d at 1189 (quoting *Randle*, 69 F.3d at 448). Specifically, if a grievance is not resolved by the Sheriff at step two of the CBA-stipulated process, a grievant may demand binding arbitration of the dispute before a three-member board. At step three, the arbitration board consists of an appointee of Denver, an appointee of the FOP, and a neutral third-party appointee selected by the two other appointees. Only a decision by the arbitration board is "final and binding on the City and the FOP." Aplts.' App. at 109.

Consequently, even the decisions that the Sheriff might make in the grievance context bearing on payroll deductions would not be "final" because they remain subject to review by an arbitration board. *Cf. Milligan-Hitt*, 523 F.3d at 1228–29 (holding that a school superintendent's hiring decisions were not final because a school board could decline to hire a superintendent's preferred candidate); *cf. also Young v. City of Idabel*, 721 F. App'x 789, 802–03 (10th Cir. 2018) (unpublished) (explaining that a mayor's power to remove city employees was not final because the city council had to review and approve any removal decision). Notably, the deputies could have pursued their grievance to step three before an arbitration board. But they elected not to do so. Therefore, their grievance was not resolved with finality. And their inaction in not pursuing the third

15

and final step could not—through some process of alchemy—transform the Sheriff's step two decision into a "final" one—that is, one that was not subject to "meaningful review." *Brammer-Hoelter*, 602 F.3d at 1189 (quoting *Randle*, 69 F.3d at 448).

Finally, the Sheriff's decision at step two of the grievance process was not a "policy decision . . . within the realm of the [Sheriff's] grant of authority." *Id.* The deputies wrongly suggest that because the "CBA very clearly gives the Sheriff the authority to review Step 2 grievances," any potential "decision on payroll grievances is within the Sheriff's grant of authority." Aplts.' Opening Br. at 11–12. But the mere fact that the Sheriff has the authority—albeit not *final* authority—to hear a payroll-deduction-related grievance does not mean that his policymaking authority includes payroll-deduction-related decisions. As previously discussed, the Denver City Charter makes this clear: the Sheriff has no legal authority to determine whether deductions are taken from employees' payroll. And, as relevant here, nothing in the CBA contradicts the fundamental grants of authority delineated in the City Charter.

In sum, then, "by examining the legal chain of authority," we conclude that the Sheriff has no final policymaking authority over payroll-deduction-related decisions. *Randle*, 69 F.3d at 448.

16

**2**

Appellants' second theory of municipal liability—*viz.*, the Sheriff ratified the decision to stop the new payroll deductions—also is unavailing.

Under the ratification theory of municipal liability, a *final policymaker* must ratify a subordinate employee's action. *See Brammer-Hoelter*, 602 F.3d at 1189 ("Municipal liability may . . . also be based on the decisions of employees with final policymaking authority or the ratification *by such final policymakers* of the decisions—and the basis for them—of subordinates . . . ." (emphasis added)); *Pyle*, 874 F.3d at 1266 ("A policy or custom [that may give rise to municipal liability] includes . . . ratification *by final policymakers* of the decisions of subordinates to whom authority was delegated . . . ." (emphasis added)); *Bryson*, 627 F.3d at 790 ("[A] municipality will not be found liable under a ratification theory unless *a final decisionmaker* ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." (emphasis added)).

But, as we have explained, the Sheriff was not a final policymaker on payroll-deduction-related matters. Therefore, for municipal liability purposes, he cannot have ratified any payroll deduction decision. *See Heinrich v. City of Casper*, 526 F. App'x 862, 863 (10th Cir. 2013) (unpublished) (explaining that a plaintiff's ratification theory of liability

17

failed "as a matter of law" because he did not show that the municipal employee who allegedly ratified a decision "*was* a final policymaker of any kind for the city").

Appellants also suggest that summary judgment is inappropriate because there is a genuine dispute of material fact as to who made the decision to halt the new payroll deductions—Ms. Cockrum or someone else. *See* Aplts.' Opening Br. at 15–16. Denver denies that there is a genuine dispute over this fact. *See* Aplee.'s Resp. Br. at 14 n.3. Yet even if the identity of the person who stopped the deductions is still in dispute, this is not a dispute over a *material* fact. The Sheriff is not a final decisionmaker on payroll-deduction-related matters. Thus, the Sheriff could not have ratified *any* person's decision to stop the new deductions. Consequently, the identity of the *actual* decisionmaker concerning this matter is immaterial.

In other words, this fact is not "essential to the proper disposition of [Appellants'] claim." *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020) (quoting *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)), *cert. denied*, --- U.S. ----, 141 S. Ct. 2764 (2021); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

irrelevant or unnecessary will not be counted."); *Com. Iron & Metal Co. v. Bache & Co.*, 478 F.2d 39, 41 (10th Cir. 1973) ("The ultimate purpose of summary judgment is to pierce the allegations of the pleadings to show there are no genuine issues of material fact. If there is an absence of material issues then the movant is entitled to judgment as a matter of law."). We conclude that there are no *material* facts in genuine dispute that preclude summary judgment here.[4]

## III

We therefore **AFFIRM** the district court's grant of summary judgment in favor of Denver.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

[4] Like the identity of the official who actually made the payroll deduction decision, the exact professional relationship between the Sheriff and Ms. Cockrum—i.e., whether she was his "subordinate" or "supervisee" or something else entirely—is also ultimately irrelevant to whether Denver is liable for the decision to end the new deductions. The precise chain of command between the Sheriff and Ms. Cockrum is not a material fact. Instead, Appellants' ratification theory fails because the Sheriff is not a final decisionmaker on payroll deduction matters.